JORGE CONSTRUCTION CO.,
Appellant,

v.

WEIGEL EXCAVATING AND GRADING COMPANY CORP., Appellee.

No. 83–220.

Supreme Court of Iowa.

Jan. 18, 1984.

William D. Baker of Davis, Baker & Bergman, Des Moines, for appellant.

Bruce H. Stoltze of Brick, Seckington, Bowers, Schwartz & Gentry, Des Moines, for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN, LARSON, and CARTER, JJ.

HARRIS, Justice.

Jorge Construction Company, a general contractor, brought this law action against Weigel Excavating and Grading Company Corp., a subcontractor, asserting that excavation work for a school construction project was improperly done. There was prior litigation in which both Jorge and Weigel became involved. The trial court sustained Weigel's motion for summary judgment on the ground Jorge's claim is barred because it should have been asserted by way of counterclaim in the prior suit and because of the doctrines of claim and issue preclusion. We reverse the trial court and remand the case for further proceedings.

In the prior case Don Deal General Contractors, Inc., a subcontractor, sued Jorge, the general contractor, Jorge's bonding

company, and Des Moines Independent School District, the owner, to recover for work completed at an elementary school. The school district cross-claimed against Deal, Jorge, Jorge's bonding company, United Brick and Tile Company of Iowa, a subcontractor, and Weigel, also a subcontractor. In its cross-claim the school district sought a declaratory judgment concerning the rights of the cross-claim defendants to the school district's remaining funds. The following chart of the *Deal* litigation might prove helpful:

```
Deal   v.   Jorge & bonding co.
                +
        school district    v.        Deal
                                       +
                             Jorge & bonding co.
                                       +
                                    United
                                       +
                                    Weigel
```

No cross-petitions or counterclaims were filed by the cross-claim defendants. In its answer to the school district's cross-claim, however, Jorge asked for general equitable relief.[1] In February 1981 the trial court ruled that Weigel's requested $4,858 from the fund would go to Jorge because Weigel breached its subcontract with Jorge and caused Jorge to spend $6,460. The court did not take any action with regard to the remaining $1,602 expended by Jorge as a result of Weigel's breach, nor, as will be pointed out, did Jorge request a money judgment.

Jorge then moved the *Deal* trial court to amend its decree to state that Jorge's expenditures due to Weigel's breach were $8,877 rather than $6,460. Jorge again asked the court for general equitable relief. The trial court complied, not only by increasing the amount, but also by entering a money judgment for the increased amount in favor of Jorge. A question in the present case is whether Jorge ever requested that judgment. Weigel moved to set aside that ruling because the motion for it was untimely. *See* Iowa R.Civ.P. 247. The court acknowledged its lack of jurisdiction

and sustained the motion to set aside the judgment.

Jorge then moved for an order *nunc pro tunc* to correct the amount in the decree from $6,460 to $8,877 and again requested general equitable relief. The court granted the motion and changed the decree, finding that it had made a "mathematical error." This time, however, it did not enter a money judgment.

Subsequently Jorge brought this suit for $4,019 against Weigel. This amount is the difference between Jorge's expenditures due to Weigel's breach ($8,877) and the $4,848 it obtained from Weigel's requested share of the school district's fund in the earlier suit.

Jorge moved for judgment on the pleadings in this case. The trial court overruled the motion, finding Jorge's claim was barred by its failure to assert a compulsory counterclaim in the *Deal* litigation and by the doctrine of *res judicata* (claim and issue preclusion). Jorge's application for an interlocutory appeal from that ruling was denied. Thereafter the trial court granted Weigel's motion for summary judgment. The court noted it had previously ruled that Jorge "is barred from pursuing its claims in this case by its failure to assert a compulsory counterclaim in [the *Deal* litigation] and by the doctrines of *res judicata* and collateral estoppel or issue preclusion."

I. *General Equitable Relief.* Weigel's position on any of the issues is in no way strengthened by Jorge's prayers for general equitable relief in the *Deal* litigation. Adding such a prayer to an equity petition has long been recommended as sound pleading practice. *See Wagner v. Securities Co.*, 226 Iowa 568, 572–73, 284 N.W. 461, 463 (1938). Such a prayer often will justify a court in granting relief beyond what is asked in specific prayers. *Schlotfelt v. Vinton Farmers' Supply Co.*, 252 Iowa 1102, 1112, 109 N.W.2d 695, 700

---

**1.** Following specific prayers, Jorge asked for "such other and further relief as the court may

deem just and equitable."

(1961); *Henry Walker Park Ass'n v. Mathews*, 249 Iowa 1246, 1257–58, 91 N.W.2d 703, 711 (1958). There are of course limits to the reach of such a prayer. Although we liberally construe them, the relief granted under a prayer for general equitable relief must be consistent with the pleadings and evidence and such as will not surprise the opposing party. *State Board of Social Welfare v. Teeters*, 258 Iowa 1113, 1120, 141 N.W.2d 581, 585 (1966); *Alcorn v. Linke*, 257 Iowa 630, 638, 133 N.W.2d 89, 94 (1965).

■ A general prayer is helpful to an equity plaintiff for what it authorizes, not for what it requires of the court or preserves to a party. Such a prayer does not serve to delineate the specific adjudication sought for purposes of *res judicata* in later litigation. The prayers for general equitable relief in the *Deal* litigation have no bearing on the issues here.

■ II. *Compulsory counterclaim.* Iowa rule of civil procedure 29 provides:

A pleading must contain a counterclaim for every cause of action then matured, and not the subject of a pending action, held by the pleader against any *opposing party* and arising out of the transaction or occurrence that is the basis of such *opposing party's* claim, unless its adjudication would require the presence of indispensable parties of whom jurisdiction cannot be acquired. The final judgment on the merits shall bar such a counterclaim, although not pleaded.

(Emphasis added.) If a claim falls within the definition of a compulsory counterclaim it is lost unless asserted in the original suit brought by the opposing party. *Associated Grocers of Iowa Cooperative, Inc. v. West*, 297 N.W.2d 103, 108 (Iowa 1980).

Although Jorge and Weigel were never opposing parties in terms of the pleadings, Weigel nevertheless asserts they were opposing parties in fact. Each was requesting a certain and, to some extent, competing share in the school district's fund. Consequently, Weigel contends, Jorge and Weigel were adversaries in the school district's declaratory judgment action. Accordingly, Weigel asserts, Jorge was required to file all of its claims against Weigel pursuant to rule 29.

Weigel rests this contention on two bases. First it draws an analogy to interpleader actions, in which an interpleading plaintiff, the "stakeholder," deposits funds or property into the court's registry, and the court determines the rights of adverse claimants to the fund. *See* Iowa R.Civ.P. 35 and 37; Fed.R.Civ.P. 22. Under federal law, the interpleading party is considered an "opposing party" to the interpleaded parties for purposes of compulsory counterclaims. *See Liberty National Bank & Trust Co. of Oklahoma City v. Acme Tool Division of the Rucker Co.*, 540 F.2d 1375, 1380–81 (10th Cir.1976). We think the analogy fails to serve Weigel. If the analogy to interpleader actions were to be drawn the school district would be in the position of the interpleading party. Jorge and Weigel would be in the position of interpleaded parties. We find no case holding that interpleaded parties, even though adverse "claimants" to the same fund, are automatically opposing parties for purposes of compulsory counterclaim.

The second ground upon which Weigel rests its argument is that the court in the *Deal* case treated Jorge and Weigel as opposing parties by applying the principle of "offset." In its decree, the court stated:

Jorge has established an offset to Weigel's claim in the sum of $6,460. The offset exceeds Weigel's claim in the amount of $4,858. Weigel's claim is hereby denied.

■ At common law a "set-off" claim is akin to a counterclaim. Set-off is a remedial process by which a court, upon petition of one party, lessens or cancels the claim of an adverse party. A set-off claim is not a defensive pleading; it is a separate cause of action by the party pleading it. *See Lewis v. Denton*, 13 Iowa 441, 442 (1862). It would seem then that at common law if either Jorge or Weigel formally pleaded a set-off claim, they would be opposing parties.

It is unclear whether the trial court, by using the word "offset," intended to apply the common law principle. It is even less clear that the court, by finding that Jorge had "established" an offset, concluded that Jorge and Weigel actually were opposing parties. What is clear is that neither Jorge nor Weigel filed any pleadings asserting a set-off claim against each other.

■ A counterclaim does not arise between co-parties merely because they hold adverse interests in the outcome of the suit. Co-parties are not opposing parties, within the meaning of rule 29, until one of them files a cross-claim against the other. *See Lyon v. Willie*, 288 N.W.2d 884, 886 n. 1 (Iowa 1980). *See also Augustin v. Mugahal*, 521 F.2d 1215, 1216 (8th Cir.1975); *Haysville State Bank v. Hauserman*, 225 Kan. 671, 673–74, 594 P.2d 172, 175 (1979).

■ We conclude that Jorge and Weigel were not "opposing parties" in the *Deal* suit. Hence rule 29 does not apply. The trial court erred in concluding that Jorge lost this claim for failing to assert it in the *Deal* litigation.

■ III. *Claim préclusion.* When a litigant has brought an action and adjudication has occurred the litigant is thereafter foreclosed, under the doctrine of claim preclusion, from further litigating the claim. *Israel v. Farmer's Mut. Ins. Ass'n. of Iowa*, 339 N.W.2d 143, 146 (Iowa 1983).

In this assignment Weigel argues that Jorge previously sued for Weigel's requested share of the school district's fund and is barred by way of claim preclusion from now suing for the rest of the loss. This issue differs from the compulsory counterclaim question just discussed. The question there was whether Jorge was required to assert this claim against Weigel in the *Deal* litigation. The questions on this assignment are whether Jorge did bring the claim and whether the claim was finally adjudicated in the *Deal* case. We consider these two questions separately with regard to two sets of pleadings and rulings in the *Deal* litigation: (A) those leading up to the court's setting aside of its ruling on Jorge's motion to reconsider and (B) those occurring after the ruling was set aside.

■ A. We cannot find that the claim Jorge asserted in the *Deal* litigation is the same claim it asserts here. In its answer to the school district's cross-claim Jorge generally admitted or denied the school district's allegations. In its motion to reconsider the decree in the *Deal* case, Jorge asked the court to "clarify its ruling to clearly provide" that Jorge's expenditure due to Weigel's breach was $8,877 rather than $6,460. But in neither pleading did Jorge request the money judgment of $4,019 sought in the present suit.

As previously explained, the posture of Jorge's first suit is in no way affected by the prayer for general equitable relief. It is also noteworthy that Weigel did not file pleadings resisting what it now asserts was a request for judgment.

Neither can we find that the trial court's decision in the *Deal* case was an adjudication in the sense required for claim preclusion. A "judgment" had been entered, not as the result of any request, but upon an untimely motion to reconsider. It was later set aside because the *Deal* court subsequently found it had lacked jurisdiction to consider Jorge's untimely motion to reconsider.

■ Weigel apparently contends that this order setting aside was a new judgment overturning a valid prior judgment. We disagree. In *In re Estate of Ramsay*, 240 Iowa 50, 59, 35 N.W.2d 651, 656 (1949) we said:

"Briefly stated the doctrine of res judicata is that an existing *final judgment rendered upon the merits*, without fraud or collusion by a *court of competent jurisdiction*, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." [Quoting authority.]

(Emphasis added.) Under the circumstances the trial court in the *Deal* case was not a "court of competent jurisdiction" to enter a

judgment for Jorge. Accordingly the judgment, later set aside, should be disregarded. *See Peterson v. Eitzen,* 173 N.W.2d 848, 850 (Iowa 1970). We note also that the ruling of the trial court setting aside the ruling which contained the judgment was not itself a "final judgment rendered upon the merits." Iowa rule of civil procedure 217 provides that dismissals for lack of jurisdiction are not adjudications on the merits.

B. We turn then to the pleadings and rulings after the ruling of the trial court setting aside the so-called judgment. After the *Deal* court set aside its ruling on Jorge's motion to reconsider the decree, Jorge moved for an order *nunc pro tunc* to correct the decree. The court granted the motion and changed the decree, finding that it had made a mathematical error. This time, however, it did not purport to grant a money judgment.

■ The trial court in the present case seemed to base its finding on claim preclusion solely on these later events. But again, we cannot find that Jorge asserted the same claim in the *Deal* litigation it asserts here. In the motion for an order *nunc pro tunc* Jorge asked the court to insert the correct amount of $8,877 (in place of the erroneous amount of $6,460). This was not the same as asking for a money judgment. We note that Weigel again filed no pleadings in the *Deal* case resisting what it now says was a request for judgment.

Moreover the *Deal* court neither granted nor denied Jorge a money judgment for $4,019. There was no adjudication; the court merely stated it was correcting a mathematical error. If the court had intended to grant or deny judgment in the *nunc pro tunc* order it surely would have done so more explicitly.

We conclude that Jorge is not precluded from asserting its claim in the present case. It never asserted this claim in the *Deal* litigation and the *Deal* court never granted or denied Jorge judgment in the amount of $4,019.

IV. *Issue preclusion.* The trial court also concluded, based on the doctrine of issue preclusion, that Jorge was barred from litigating whether it was entitled to a $4,019 judgment. In *Israel,* 339 N.W.2d at 146, we listed four prerequisites for issue preclusion:

(1) The issue concluded must be identical;

(2) The issue must have been raised and litigated in the prior action;

(3) The issue must have been material and relevant to the disposition of the prior action; and

(4) The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

The first three of the prerequisites were not met.

■ First, the issue in this case is not identical to that litigated in the *Deal* case. The issue in the *Deal* case was whether Jorge was entitled to Weigel's requested share of the school district's fund. The amount of Jorge's expenditures due to Weigel's breach had to be established, but only in order to determine whether it was less than or equal to Weigel's requested share of $4,858. In contrast, the issue in this case goes further: Is Jorge entitled to the remaining $4,019?

Second, for the reasons stated in the preceding division, the issue of Jorge's entitlement to the $4,019 was neither raised nor litigated in the *Deal* case. Third, the issue here (Jorge's entitlement to $4,019) was neither material nor relevant to the disposition of the prior action. Issue preclusion plainly does not apply.

The trial court was in error on each of the three grounds upon which it dismissed plaintiff's suit. Accordingly the judgment of the trial court is reversed and the case remanded for further proceedings in conformance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.